DATE FILED: February 23, 2023 6:04 PM
FILING ID: 8700315E5D5D5
CASE NUMBER: 2023CV30016

| | |
|---|---|
| **DISTRICT COURT, GRAND COUNTY**<br>**STATE OF COLORADO**<br>307 Moffat Ave<br>Hot Sulphur Springs, CO 80451<br><br>_____<br><br>**Plaintiff: DAVID L. JOHNSTON**<br><br>**v.**<br><br>**Defendant: STATE FARM FIRE AND CASUALTY**<br>**COMPANY** | <br><br><br><br><br><br>^COURT USE ONLY^ |
| *Attorneys for Plaintiff:*<br>Katherine E. Goodrich, No. 48853<br>Rodney J. Monheit, No. 48919<br>MoGo LLC<br>78311 U.S. 40<br>Winter Park, CO 80482<br>Tel: (303) 357-1317<br>katie@mogollc.com<br>rodney@mogollc.com<br><br>Natascha O'Flaherty, No. 22183<br>Never Summer Law, LLC<br>70 E Agate Ave, Unit H<br>PO Box 321<br>Granby, CO 80446<br>Tel: (970) 557-3755<br>natascha@neversummerlaw.com | Case No:<br><br>Div. |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, David L. Johnston, by and through his attorneys, and for his

Complaint against Defendant State Farm Fire and Casualty Company ("State Farm") alleges and

avers as follows:

EXHIBIT A

## INTRODUCTION

1.      In October 2020, a massive wildfire broke out in Grand County, Colorado. The

"East Troublesome Fire" scorched 193,812 acres in Grand County, which at the time made it the

second largest fire ever recorded in Colorado history.[1]

2.      On January 15, 2021, President Trump approved Colorado Governor Jared Polis's

request for a Major Disaster Declaration for the areas affected by the East Troublesome Fire.

3.      This action concerns the delay and denial of payment of insurance benefits

covering Mr. Johnston's log cabin home, and all of the belongings inside, which burned to the

ground as a result of the East Troublesome Fire.

4.      Colorado law recognizes that insurance is a unique product that is purchased not

for commercial advantage, but for peace of mind; for protection against financial calamity and

uncertainties. An insurance company's promise of security has real value. Those fortunate

enough to never experience loss, and therefore never collect a penny from their insurers, spend

their money for the sole purpose of security and peace of mind.

5.      Colorado law recognizes that there is a disparity in bargaining power between the

insurer and the insured: "Contract damages offer no motivation whatsoever for the insurer *not* to

breach. If the only damages an insurer will have to pay upon a judgment of breach are the

amounts that it would have owed under the policy plus interest, it has every interest in retaining

---

[1] 9News, East Troublesome Fire in Grand County now 100% contained,
https://www.9news.com/article/news/local/wildfire/east-troublesome-fire-contained/73-552f43cc-2849-469e-948d-b55fce0a01b3 (accessed Feb. 23, 2023).

EXHIBIT A

the money, earning the higher rates of interest on the outside market, and hoping eventually to force the insured into a settlement for less than the policy amount."[2]

6.      In Colorado, insurance companies are subject to special remedies if they fail to honor their promises. In this action, Mr. Johnston seeks damages for State Farm's breach of insurance contract, bad faith breach of insurance contract, and violation of C.R.S. § 10-3-1115.

**PARTIES, JURISDICTION & VENUE**

7.      David L. Johnston is an individual residing in the State of Colorado.

8.      State Farm is a multiple line insurance company domiciled in the State of Illinois, with its principal place of business in Bloomington, Illinois.

9.      At all relevant times, State Farm was authorized to conduct the business of insurance in the State of Colorado, and conducted the business of insurance in Colorado.

10.     State Farm sold  Mr. Johnston a homeowners insurance policy, policy number 06-J6-8460-6 (the "Policy"), which covered real and personal property located at 353 County Road 4911, Grand Lake, Colorado 80447 (the "Property").

11.     This Court has subject matter jurisdiction because the events complained of occurred in Colorado and the resolution of this dispute requires the application of Colorado law. Colo. Const. art. VI § 9(1).

12.     This Court has personal jurisdiction over State Farm under section 13-1-124(1)(a), (b) and (d), C.R.S., because State Farm conducted the business at issue in this action, committed tortious acts and contracted to insure the Property in Grand County, Colorado.

---

[2] *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 468 (Colo. 2003).

EXHIBIT A

13.     Pursuant to C.R.C.P. 98(c), venue is proper in this judicial district, which Mr.

Johnston designates as the place of trial.

## FACTUAL ALLEGATIONS

14.     The main structures on the Property consisted of a large, custom-built log cabin

home and a two-story detached garage.

15.     Below are a few photographs of the Property:



4

EXHIBIT A



16.    On October 21, 2020, the Property, along with all the contents inside, burned to the ground in a total loss during the East Troublesome Fire.

17.    On November 16, 2020, Mr. Johnston emailed Brayden Hurst two bids from debris removal contractors All Around Tree Service, LLC and H2 Enterprises. Mr. Johnston requested that State Farm review as soon as possible because Mr. Johnston wanted to commit to a slot in those contractors' backlog of projects. Mr. Johnston informed State Farm that their backlog was filling up quickly.

EXHIBIT A

18.    Mr. Johnston immediately filed an insurance claim with State Farm, who assigned

claim number 06-13D5-94Q to the loss.

19.    Mr. Johnston first visited the ashy remains of the Property on November 20, 2020,

and immediately began negotiations with debris removal contractors. He sent photographs of the

Property to State Farm and hired H2 and All Around Maintenance Contractor to perform debris

removal services.

20.    On December 20, 2020, Mr. Johnston contacted eleven different contractors to

assess their interest and qualifications to rebuild the Property. He narrowed that list down to four

contractors with whom he provided the original architectural designs and CAD plans, as well as

photographs of the Property from before the fire.

21.    In a letter dated December 29, 2020, State Farm representative Brayden Hurst

wrote:

> "We are writing to provide you an update on the above-referenced
> claim. Additional time and information are needed to complete our
> evaluation. The following is needed: -State Farm Estimate
> Completion from Adjuster
>
> -    State Farm Estimate Completion from Adjuster
> -    Contents Colaboration (sic) From Insured
>
> We will keep you informed of our progress as we continue to work
> toward concluding your claim."

22.    On December 30, 2020, Mr. Johnston emailed Grant Schumann of All Around

Tree Service LLC stating: "I received your message that you have completed all of the debris

6

EXHIBIT A

removal work and I have submitted the request for payment to the insurance company/claims

adjuster. As soon as I receive payment on the claim I will get you the final payment."

23.    Grant Schumann of All Around Tree Service LLC replied to Mr. Johnston's

December 30, 2020 email stating:

> "Dave,
>
> We understand that it is a difficult time right now dealing with
> insurance etc. Unfortunately however, per our contract if a
> payment is not received by January 7th, which is 30 days after the
> final bill was due, we will have to charge a 10% late fee. We
> understand this is a difficult time and don't won't (sic) to be
> unreasonable, however we also have to make payroll. Let us know
> if you have any questions."

24.    On January 16, 2021, at 9:45 AM, Mr. Johnston sent an email to State Farm's

claims department asking about his Loss of Use coverage under the Policy. Specifically, he asked

for a written response as to when is included in this coverage, and asked "when and how the

payment is received? Do we have to pay these funds out of our cash flow, is an expense report

required, how long will it take to get reimbursed?"

25.    On January 16, 2021, at 12:58 PM, Mr. Johnston emailed State Farm's claims

department requesting a digital copy of his policy and renewal declarations.

26.    On January 19, 2021, Mr. Johnston filed a complaint ("DORA Complaint") with

the Colorado Department of Regulatory Agencies - Division of Insurance ("DORA").

27.    On January 20, 2021, Mr. Johnston received preliminary budgets and timelines

with Kopasz Custom Homes, who is located in Parker, Colorado. Kopasz Custom Homes sent

EXHIBIT A

Mr. Johnston an estimate totaling over $1.8 million to rebuild the Property's dwelling and two-story garage.

28.     On January 21, 2021, Mr. Johnston contacted the Executive Director of the Grand County Builders Association in order to gain insight into the building environment in Grand County. She informed Mr. Johnston that before the East Troublesome Fire, builders in Grand County had a backlog of homes "to be built" of two years. After the fire, she said she felt that an additional three years could be added to the backlog due to the shortage and the cost of construction materials and qualified builders in Grand County.

29.     On January 21, 2021, Mr. Johnston contacted Dennis Anderson of Jeremiah Johnson Log Homes to discuss their interest in rebuilding the Property.

30.     In a letter dated January 23, 2021, State Farm wrote:

> "We are writing to provide you an update on the above-referenced claim. Additional time and information are needed to complete our evaluation. The following is needed:
>
> Estimate Completion and approval from Adjuster
> Estimate is near completion and will be sent for approval soon
> Contents Colaboration (sic) list from Insured
>
> We will keep you informed of our progress as we continue to work toward concluding your claim."

31.     In a letter dated January 28, 2021, State Farm Claim Specialist Brayden Hurst wrote for the purpose of "address[ing] the questions I reviewed in your emails, recap and to verify the pertinent points of our conversation."

EXHIBIT A

32.    In State Farm's January 28, 2021 letter, State Farm Claim Specialist Brayden Hurst stated: "I have also ordered a copy of the policy and declarations pages to be mailed per your request."

33.    State Farm's January 28, 2021 letter listed the following as the policy limits and deductible amount:

| | |
|---|---|
| Dwelling | $1,061,682.00 |
| Debris Removal - 5% | $53,084.00 |
| Dwelling Extensions | $106,168.00 |
| Additional Coverages: Option ID - 20% | $212,336.40 |
| Option OL (Ordinance or Law)- 10% | $106,168.00 |
| Coverage B - Personal Property | $796,262.00 |
| Option JF | $2,500.00 |
| Debris Removal | $39,813.00 |
| Coverage C - Loss of Use | |
| Additional Living Expense | 24 months |
| Deductible | $9,913.00 |

34.    State Farm's January 28, 2021 letter also stated:

"During our meeting, we discussed your responsibility to select a contract to complete the building repairs to your home. At that time, you requested I provide you the name of contractors that would assist you with the restoration of your home. As we discussed, you are under no obligation to use any contractor whose

EXHIBIT A

> name is provided to you by either me or any representative of State
> Farm … It is our understanding that you (are in the process of
> interviewing) have voluntarily decided to hire <u>GC</u> to complete the
> repairs to your home. … A contractor was called out to your home
> to assist with the emergency repairs. And it is our understanding
> that <u>GC</u> provided this service." (Underline in original).

35.    Mr. Johnston and Brayden Hurst never had a meeting discussing contractors.

36.    State Farm's January 28, 2021 letter also attempted to explain the Option ID

coverage. Brayden Hurst stated:

"As we discussed, if the estimated building cost of your home exceeds the policy limits for

Coverage A - Dwelling, there is additional coverage for these repairs under Option ID -

Increased Dwelling Limit… This $53,084.00 is in addition to the Coverage A limit.

37.    The Option ID limit under the Policy is not $53,084.00; it's $212,336.40

38.    State Farm's January 28, 2021 letter also attempted to explain the Policy's

Mortgage Clause. Brayden Hurst wrote:

> "Our payment for the building damages will include the mortgage
> company as an individual payee. We currently list <u>Central Loan</u>
> <u>admin & Reporting IAOA A TIMA</u> Mortgage Company as the
> mortgagee on this property. We suggest you contract the mortgage
> company as soon as possible to discuss their procedures for
> handling insurance drafts." (underline in original).

39.    Mr. Johnston has never had a mortgage on the Property.

40.    State Farm's January 28, 2021 letter also stated: "<u>ALE Solutions</u> is searching for a

temporary home for you at this time." (Underline in original).

41.    ALE Solutions was not searching for a temporary home and had never been

involved in this claim.

10

EXHIBIT A

42. In a letter dated February 2, 2021, State Farm Section Manager Christina Sandoval responded to Mr. Johnston's DORA Complaint. In response to DORA's request that State Farm "explain, in detail, any delays that may have occurred," State Farm responded that

> "the claim has been handled reasonably and without significant delay based on the severity of the Wildfire events. However upon further review we do acknowledge we could have been better at keeping you updated with both status and progress of the claim progression. We do apologize for that and will work to timely provide updates. Based on our review you have asked all future correspondence to be in writing. We agree this is a good plan as it will document the communication."

43. At the time State Farm submitted its response to Mr. Johnston's DORA Complaint (about three months after the fire) State Farm had not issued a single payment to Mr. Johnston for his fire loss.

44. In another response to Mr. Johnston's DORA Complaint, State Farm acknowledged that "[t]o date a structure settlement has not been issued." However, State Farm continued, "State Farm offered you 50% advance on your dwelling policy limits. You declined this advance."

45. State Farm never offered a 50% advance on the dwelling policy limit as an "advance." This was never documented in a writing to Mr. Johnston. State Farm communicated this "50% advance" via telephone conversation in which State Farm made it sound like it was a loan and that Mr. Johnston would have to repay.

EXHIBIT A

46.     In another response to Mr. Johnston's DORA Complaint, State Farm explained, for the first time, that a 30% advance on the personal property coverage limit was also available to Mr. Johnston.

47.     On February 2, 2021, Mr. Johnston sent the original CAD and architectural design plans, as well as photographs of the Property, to Jeremiah Johnson Log Homes and requested a bid to rebuild the Property.

48.     On February 19, 2021, the Grand County Builders Association ("GCBA") 2021 Board of Directors posted a letter on their website in which they shared an estimated price range for turnkey, ground-up construction based on total building area under roof as follows:

> "Smaller, municipal lots with provided utility services = $325/sf to $375/sf
>
> Larger, rural lots = $350/sf to $400/sf
>
> Understand the turnkey costs would not include demolition and debris removal associated with homes destroyed in the fire. While it may be possible to construct new homes for slightly less than the ranges noted, costs can definitely far exceed the upper ends of these ranges by an order of magnitude. Costs of $600/sf to $800/sf are being surpassed with the construction of numerous, luxury homes throughout the County. It is also important to note that the costs referenced above reflect actual construction costs as confirmed by multiple, local builders prior to the East Troublesome Fire." (Underline in original).

49.     On February 26, 2021, State Farm completed an estimate to rebuild the dwelling on the Property for a replacement cost of $1,113,795.46, and calculated the actual cash value of the Property at the time of loss at $829,901.06. The "Summary of Coverage A - Dwelling" worksheet provided by State Farm indicated that the "Total Amount of Claim If Incurred" would

12

EXHIBIT A

be $1,061,682.00. State Farm's payment summary worksheet did not include any accounting Option ID coverage amounts even though the estimated cost to rebuild the Property exceeded the Coverage A - Dwelling limit.

50.    On a square footage basis, State Farm's estimated replacement cost amount was less than all of the turnkey rates outlined in the GCBA's February 19, 2021 letter.

51.    The true actual cash value of the dwelling on the Property exceeded the limits of insurance under Coverage A. State Farm's estimate was woefully inadequate, did not include the correct items, and the pricing used to create the estimate is not based on any price that was available in the market in Grand County, Colorado.

52.    According to DORA's Colorado Insurance Industry Statistical Report for the year 2020, State Farm issued more homeowner's insurance policies in Colorado than any other insurer. State Farm holds an astonishing 20.03% market share. The insurer with the next highest market share holds just 5.87%.[3]

53.    Upon information and belief, State Farm insured other properties located in Grand County that were affected by the East Troublesome Fire. At some point over the next several months, but prior to the completion of Mr. Johnston's estimate, State Farm learned that the builders in the area were charging far more than what its adjusters were calculating using their estimation software.

54.    State Farm knew or should have known that the estimation software that their adjusters used to create estimates for rebuilding insureds' fire-destroyed homes were always

---

[3] https://drive.google.com/file/d/1O-MDeTzJ1pAMe57yqmA0XD8Wev9qGejF/view, at .pdf page 128 (accessed Feb. 23, 2023).

EXHIBIT A

under the going market rate in the area, and that their estimates did not bear any relation to the real market conditions in the area in the months following the fire.

55.    In compliance with C.R.S. § 10-4-120(3)(c), (e) and (f), a reasonable insurer in State Farm's position would have relied on competitive bids or market surveys that determine a fair and reasonable market price for determining the cost to rebuild the Property.

56.    On March 2, 2021, State Farm issued its first payment to Mr. Johnston for the amount of $879,907.48, which comprises the actual cash value (as calculated by State Farm) of the dwelling, dwelling extension, debris removal, and the limits of insurance for trees/landscaping coverage.

57.    On March 11, 2021, Mr. Johnston paid Jeremiah Johnson Log Homes $10,830.00 for CAD design drafting the plans to rebuild the Property.

58.    On March 24, 2021, State Farm issued a payment via electronic funds transfer for $83,002.30.

59.    In a letter dated March 24, 2021, State Farm Claim Specialist Cassy Hunkins, on behalf of Holly Hourihan, explained that the electronic funds transfer of $83,002.30 was an additional actual cash value payment. The letter continued to explain,

> "One of the provisions of your insurance policy is Replacement Cost Coverage. This coverage provides for payment of the actual, necessary cost of making repairs to your dwelling without any deduction for depreciation. However, your policy requires that repairs be completed before replacement benefits may be claimed.
>
> The enclosed Explanation of Building Replacement Cost Benefits form indicates an additional amount of $258,024.32 is available to you for replacement cost benefits and may be claimed upon completion of the repairs."

14

EXHIBIT A

60.     State Farm's March 24, 2021 letter continued on to explain that Mr. Johnston's estimate "includes items which may be payable under Option OL - Building Ordinance or Law coverage. Items covered under Option OL are payable when the dwelling is repaired or replaced…"

61.     Neither State Farm's March 24, 2021 letter, nor the enclosed "Explanation of Building Replacement Cost Benefits" made any mention of the Option ID coverage available to Mr. Johnston under the Policy.

62.     In another letter dated March 24, 2021, State Farm Claim Specialist Cassy Hunkins, on behalf of Holly Hourihan, wrote:

> "I reviewed the file and noticed that you had requested a copy of your policy. I could not determine if had (sic) received it or not, so I am sending it you now with supporting documents. I apologize if this was previously sent to you, or if we had not forwarded thes documents when you had requested them.
> Additionally, I do see we have received the expense reports you submitted on 12/17/2020 & 1/16/2021. I do not see where they have been reviewed or processed. I will forward this request to Holly so she can address these upon her return on 3/29/2021. She should follow up with you that week regarding those documents. Lastly, I will be updating the structural estimate with the provided dates and will follow up with you with that additional information."

63.     On April 5, 2021, State Farm issued a payment of $99,324.68 for debris removal.

64.     On April 9, 2021, State Farm issued a payment to Mr. Johnston for the amount of $23,980.33. This payment was accompanied by a letter dated April 9, 2021, in which State Farm Claim Specialist, Holly Hourihan, wrote: "Colorado regulation 702-5-1-14 Sec. 4(1)(b) allows

15

EXHIBIT A

for the payment of interest on your claim if certain circumstances regarding timely payment are not met. We have identified a potential question regarding whether these time requirements were met. In order to resolve any potential question or concern, we are enclosing an interest payment in the amount of $23,980.33."

65.    3 Colo. Code Regs. 702-5-1-14 Sec. 4(A)(1)(b) states in pertinent part:

"If an insurer fails to make a decision and/or pay benefits due under the policy within sixty (60) days after a valid and complete claim has been received, and there is not a reasonable dispute between the parties, and the insured has complied with the terms and conditions of the policy of insurance, the Commissioner of Insurance may impose the following penalties to be paid by the insurer to the insured: … (2) If the claim is more than $100.00, the penalty shall be 8 percent annual interest on the amount of benefits due, computed from the latest of the time a valid and complete claim is received, the reasonable dispute was resolved, or the insured complied with the terms and conditions of the policy until the time the benefits due are paid by the insurer."

66.    On April 27, 2021, Mr. Johnston sent an email to Holly Hourihan in which he pointed out that State Farm's building estimate did not reflect the features of the Property as it stood before the fire in three respects: (1) the decking material specified in State Farm's estimate was "redwood," when in fact, Premium Trex was the decking material on the Property at the time of the fire; (2) the exterior door specified in the State Farm estimate listed only $1,462 when, in fact, the exterior door was ornately carved and would cost $7,527.00 to replace; and (3) the State Farm estimate listed the side lights at a replacement cost of $3,159.00, when in fact, the cost to replace the side lights would be $4,368.00. The discrepancies amounted to $3,159.00.

EXHIBIT A

67.    Having received no response from State Farm to his April 27, 2021 email to Holly

Hourihan, Mr. Johnston

68.    In a letter dated May 10, 2021, State Farm representative wrote:

"We are writing to provide you an update on the above-referenced
claim. Additional time and information are needed to complete our
evaluation. The following is needed:

1. Please send an itemized bid from your contractor of choice when
available in order to reconcile any differences in scope or pricing.

2. Please submit a copy of the paid receipts for building permit(s)
when received.

3. Option ID is an additional amount available only if the total
damages of coverage A loss exceeds the limit shown on the
declarations page of your policy.

4. Please send copies of receipts and written documentation with
dates of your mileage to and from the property site during the
rebuild process.

5. You have until 10/21/2023 to receive Replacement Cost Benefits
for personal property.

6. Please provide a time line (sic) for repairs including the
expected start date and completion date established by your
contractor.

69.    By June 21, 2021, Mr. Johnston had to inform Jeremiah Johnson Log Homes that

they were unable to commit to payments and proposed deadlines due to State Farm's perceived

inability to provide answers to Mr. Johnston's long-standing questions.

70.    In a letter dated July 3, 2021, State Farm representative Linda Francis wrote to

Mr. Johnston:

17

EXHIBIT A

"We are writing to provide you an update on the above-referenced claim. Additional time and information are needed to complete our evaluation. The following is needed:

Coverage A

Total payments issued - $1,086,329.31
- Replacement Cost Benefits available until October 21, 2022

Coverage B

Total payments issued - $147,240.74
- Replacement Cost Benefits available until October 21, 2023

Coverage C

Total payments issued - $2,712.34

We will keep you informed of our progress as we continue to work toward concluding your claim."

71.    In a letter dated September 23, 2021, Mr. and Mrs. Johnston wrote the following

to State Farm representative Linda Francis:

"As we have progressed down this road to recover from the East Troublesome Fire in Grand Lake, Colorado, we are concerned about the time frames to rebuild. We have been told by our agent and several adjusters that this is negotiable and not to worry.

This disaster affected a large number of people and the difficulty of finding a builder is monumental. Grand County does not have enough builders to handle this volume of new construction. The price for lumber, cement, etc. is astronomical at this time.

We have experienced huge delays from State Farm as far as settling on our policy. That alone has been a big part of the problem. The time was quickly used up waiting on State Farm to give us answers.

EXHIBIT A

> We would like to have Coverage A - Replacement Cost Benefits available until October 21, 2023 and Cover[age] B - until October 21, 2024."

72.     On October 2, 2021, Mr. Johnston received a ballpark estimate from Brian Kocher of On Centerline Solutions, of $1.3 million to $1.7 million to rebuild the Property.

73.     On December 21, 2021, the Marshall Fire destroyed over 1,000 homes and businesses in Boulder County, Colorado. This exacerbated the issue of building contractor availability in Grand County.

74.     In a letter dated June 3, 2022, State Farm representative Dawn Rochon wrote: "We have completed our estimate and issued payments in the amount of $1,124,357.09 to date… To obtain replacement cost benefits for this loss, you must confirm completion of repairs or replacement by submitting invoices, receipts, or other documentation… At this time additional time (sic), we are still waiting on a signed contract from your contractor."

75.     In a "Summary of Loss" worksheet dated October 3, 2022, State Farm representative Dawn Rochon again omitted any reference to or accounting of the Policy's Option ID coverage.

76.     State Farm's October 3, 2022 Summary of Loss worksheet also shows that State Farm depreciated Mr. Johnston's personal property by over 50%. Mr. Johnston's personal property should not have been depreciated by more than 50%.

77.     State Farm's October 3, 2022 Summary of Loss worksheet also shows that the debris removal costs are $62,857.54, and that the same amount is "over limit," and that $0.00 was paid under the Policy's Debris Removal coverage.

EXHIBIT A

78.     The Policy's Debris Removal coverage is an "Additional Coverage," which provides that "[w]hen the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense."

79.     On October 4, 2022, Mr. Johnston and his wife, Janice Johnston, entered into a construction contract with Randy Hodapp of Hodapp Custom Homes, Inc. ("Hodapp") and submitted the signed contract to State Farm.

80.     State Farm confirmed their receipt of the signed contract with Hodapp in a letter dated October 4, 2022. In that same letter, State Farm representative Dawn Rochon included what appeared to be a provision from the Policy, stating: "Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage." The Policy includes no such provision.

81.     By signing the rebuild contract with Hodapp, Mr. Johnston incurred costs exceeding the Policy's Coverage A limit of insurance.

82.     To date, State Farm has not issued payment for the limit of insurance under the Policy's Coverage A - Dwelling.

83.     To date, State Farm has not issued payment of benefits owed under the Policy's Option ID coverage.

84.     To date, State Farm has not issued payment of benefits owed under the Policy's Debris Removal coverage.

EXHIBIT A

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

85.     Mr. Johnston incorporates the above allegations as if fully set forth.

86.     The Policy is a contract.

87.     Mr. Johnston complied with all conditions and obligations under the Policy, or the nonperformance of any such conditions was waived by State Farm.

88.     State Farm breached the contract by:

    a.     Failing to make payment of all covered benefits owed under the Policy's Coverage A - Dwelling;

    b.     Failing to make payment of all covered benefits owed under the Policy's Option ID coverage;

    c.     Failing to make payment of all covered benefits owed under the Policy's Debris Removal coverage; and

    d.     Failing to make payment of all covered benefits owed under the Policy's Coverage B - Personal Property.

89.     As a direct and proximate result of State Farm's breach, Mr. Johnston is entitled to damages to be proved at trial.

EXHIBIT A

## SECOND CLAIM FOR RELIEF
(Bad Faith Breach of an Insurance Contract)

90.     Mr. Johnston incorporates the above allegations as if fully set forth.

91.     Under the Policy's implied covenant of good faith and fair dealing, State Farm covenanted that it would deal with Mr. Johnston fairly and honestly, and do nothing to impair, hinder, or injure his rights to benefits under the Policy.

92.     Through the act and omissions described above, State Farm breached that covenant, as its conduct fell below the applicable common law and industry standards of care, violated the duties of good faith and fair dealing, and constituted the tort of bad faith breach of an insurance contract.

93.     State Farm's acts and omissions were unreasonable and State Farm knew so.

94.     State Farm's acts and omissions were committed with reckless disregard of Mr. Johnston's reasonable expectations as an insured under the Policy.

95.     State Farm breached its duty of good faith and fair dealing through the following unreasonable acts, among others;

  a.     Misrepresenting the pertinent facts and insurance policy provisions relating to coverages at issue;

  b.     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

  c.     Failing to adopt and implement reasonable standards for the prompt payment of claims arising under the Policy;

EXHIBIT A

d.      Failing to adequately convey the coverages available under the Policy;

e.      Failing to affirm or deny coverage of claims within a reasonable time after
proof of loss statements have been completed;

f.      Not attempting in good faith to effectuate prompt, fair, and equitable
settlement of the claim even though liability had become reasonably clear;

g.      Failing to ensure that the repair estimate it prepared was adequate to restore
the property within a reasonable time to its condition before the loss;

h.      Intentionally deflating its estimated cost to rebuild the Property so that the
limits of insurance would not be increased to the full value that was available
under the Policy;

i.      Failing to timely inform Mr. Johnston of the coverages he was entitled to
under the Policy; and

j.      Other conduct to be revealed in discovery.

96.     State Farm engaged in unreasonable conduct with respect to Mr. Johnston's claim
for benefits that a reasonably careful insurer would not take under the same or similar
circumstances.

97.     State Farm engaged in unreasonable conduct willfully and wantonly.

98.     As a direct and proximate result of State Farm's bad faith breach of the Policy,
Mr. Johnston suffered damages in amounts to be proved at trial.

23

EXHIBIT A

### THIRD CLAIM FOR RELIEF
(Violation of C.R.S. § 10-3-1115 & Relief Under C.R.S. § 10-3-1116)

99.     Mr. Johnston incorporates the above allegations as if fully set forth.

100.    Section 10-3-1115(1), C.R.S., forbids insurers like State Farm from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of any first-party claimant.

101.    Section 10-3-1115(2), C.R.S., provides that "an insurer's delay was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."

102.    Mr. Johnston is a first-party claimant within the meaning of C.R.S. § 10-3-1115(1)(b).

103.    State Farm is an entity engaged in the business of insurance.

104.    State Farm delayed authorizing payment of covered benefits to Mr. Johnston and did so without a reasonable basis within the meaning of C.R.S. § 10-3-1115.

105.    State Farm unreasonably delayed authorizing payment for the actual cash value of the Property under the Policy's Coverage A - Dwelling coverage.

106.    State Farm unreasonably delayed authorizing payment for the full policy limits owed under Coverage A - Dwelling.

107.    State Farm unreasonably delayed authorizing payment under the Policy's Option ID coverage.

EXHIBIT A

108.    State Farm unreasonably delayed authorizing payment under the Policy's
Additional Coverage - Trees, Shrubs, and Landscaping.

109.    State Farm unreasonably delayed authorizing payment under the Policy's
Additional Coverage - Debris Removal.

110.    State Farm unreasonably delayed authorizing payment under the Policy's
Coverage B - Personal Property coverage.

111.    Therefore, Mr. Johnston is entitled to damages awardable under C.R.S. §
10-3-1116(1), separate from and in addition to those remedies and damages available under any
other claims for relief.

<u>Plaintiff demands a jury on all issues so triable.</u>


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff David L. Johnston respectfully requests the Court enter
judgment in his favor on all claims and award damages:

     a.   For all covered benefits due and owing under the Policy;

     b.   For economic and non-economic damages as permitted by law;

     c.   For attorney's fees, court costs, and two times the covered benefits, as permitted
under C.R.S. § 10-3-1116(1);

     d.   For pre- and post-judgment interest, as permitted by law; and

     e.   For such other and further relief as this Court deems fair and just.

EXHIBIT A

DATED: February 23, 2023                    Respectfully submitted,


                                            **MoGo LLC**

                                            *s/ Rodney J. Monheit*
                                            Katherine E. Goodrich
                                            Rodney J. Monheit

                                            **Never Summer Law**

                                            Natascha O'Flaherty

                                            *Attorneys for David L. Johnston*

EXHIBIT A